Ronald A. HINKEL, Appellant,

v.

UNITED STATES, Appellee.

No. 86–1517.

District of Columbia Court of Appeals.

Submitted May 19, 1988.
Decided June 27, 1988.

---

Thomas K. Clancy, Washington, D.C., appointed by the court, was on the brief, for appellant.

Joseph E. diGenova, U.S. Atty. at the time the brief was filed, and Michael W. Farrell, Patricia A. Riley, and Odessa F. Vincent, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before BELSON and TERRY, Associate Judges, and GALLAGHER, Senior Judge.

BELSON, Associate Judge:

Convicted by jury of distribution of a controlled substance (heroin) in violation of D.C. Code § 33–541(a)(1) (1987 Supp.), appellant raises two contentions on appeal: (1) that his conviction must be reversed because the prosecutor, in closing argument, compared the credibility of police officer witnesses with the credibility of a defense witness who had been convicted of several crimes, and (2) that the trial court erred in denying his motion for mistrial based on a police officer's response to a question put to him on cross-examination by defense counsel that revealed another arrest of appellant. We affirm.

Appellant first argues that certain allegedly prejudicial remarks by the prosecutor during rebuttal argument, to which there was no objection below, require reversal of appellant's conviction. Specifically, appellant argues that the prosecutor's comments regarding the credibility of police officer witnesses unfairly bolstered the government's case by suggesting that these witnesses should be believed merely because they were police officers. Given the absence of objection, appellant is forced to argue that the prosecutor's argument led to plain error. *See Watts v. United States,* 362 A.2d 706, 709 (D.C.1976) (en banc). We are unpersuaded.

During its case in chief, the government called as witnesses several police officers, including Officer Sinclair, who made the undercover buy; Officer Jones, who arrested appellant; and Officer Buckley, who arrested appellant's accomplice. In closing argument, defense counsel first told the jury that "the Government's case, if you look at it, is based on the testimony of one officer essentially; that's Officer Sinclair." Defense counsel then noted various purported inaccuracies in Sinclair's testimony and that of other officers, stating that "it goes to the credibility of Officer Jones." With respect to Officer Buckley, defense counsel argued, "how much credit can you

put on the testimony of an officer who readily admits he doesn't remember, or doesn't really remember, or couldn't remember if he had not read his notes." He then argued that "we're talking about the credibility of witnesses and especially the credibility of Officer Sinclair. It seems his testimony is not credible under the circumstances, and with respect to all the other testimony." Later, defense counsel asserted that "[w]e have evidence that's not really credible from police officers." Finally, he again emphasized that Officer "Sinclair's testimony is not very credible. He was not accurate in his description. Officer Jones wasn't accurate in his description. . . ." Thus, defense counsel concluded that "[t]he only thread of evidence the Government has is Officer Sinclair's testimony, which is very shaky testimony."

In rebuttal, the prosecutor contrasted appellant's witness, Herbert Royal, with those called by the government, asking "[a]re you going to believe a convicted felon, or are you going to believe a member of our police department?" The prosecutor then cited Royal's convictions for distribution of narcotics, destruction of property, and unauthorized use of a motor vehicle, all bearing on his credibility, which the prosecutor contrasted with the credibility of the police officers who

> when you come right down to it . . . don't have a motive to be other than truthful. They're out there doing their job. That's what they're paid for. That's what they do; they do it every day. Hundreds of cases, they testified to that; in one instance, thousands. They don't have an interest in the outcome of this case, none. They're not biased in favor of any of the parties in this case. . . . There is no bias there.

Ultimately, you come down to [Officer] Paul Sinclair, whose account is corroborated by the radio tape, by the other officers against Mr. Royal; a convicted felon and a police officer, a police officer who you saw yourselves.

In his spare time, what does he do? He's out there being a sergeant in the Army, in the reserves. And we submit that this man is worthy of belief, and that based on his testimony and based on the testimony of the other officers who were there, that you should find [appellant] guilty as charged. . . .[1]

██ This court has previously held that when defense counsel in closing argument attacks the credibility of government witnesses, a prosecutor in rebuttal argument may properly contrast the credibility of defense witnesses, including the defendant himself, with the credibility of the government witnesses, including police officers. *E.g., Reed v. United States*, 485 A.2d 613, 620 (D.C.1984) ("We agree with the government that '[t]he clear thrust of the prosecutor's argument was to contrast the credibility of [appellant]—who was the only nongovernment witness to testify— with the credibility of the police officers,' which defense counsel had attacked in his closing argument"). While the prosecutor may argue the credibility of police officer witnesses, in doing so the prosecutor may not ignore the proscription against arguing that a police officer is entitled to greater credence merely because he is a police officer. This prohibition is contained in the standard jury instruction regarding police officer testimony, the substance of which the trial court gave in the instant case.[2] On the record before us, we conclude that, on the whole and "[p]lacing matters in context, the prosecutor sought, on rebuttal, to rehabilitate the officers' credibility, which

---

1. The prosecutor's comment regarding Officer Sinclair's participation in the Army Reserves apparently was prompted by the fact that due to a conflict between a reserve training exercise and his court appearance, Sinclair appeared in court wearing his Army uniform.

2. The trial court instructed the jury, substantially in the language of Standardized Criminal Jury Instruction 2.25, as follows:

> Police officer's testimony should be considered by you just as any other evidence in the case. And in evaluating a police officer's credibility, you should use the same guidelines which you apply to the testimony of any witness. In no event should you give either greater or lesser credence to the testimony of any witness merely because the witness is a police officer.

had been put in question by defense counsel during his closing argument." *Toliver v. United States*, 468 A.2d 958, 961 (D.C. 1983). We caution, however, that prosecutors must exercise great care in rehabilitating police officer witnesses or otherwise arguing their credibility to avoid transforming permissible advocacy into an improper statement regarding the inherent credence owed a police officer's testimony. Considering the closing argument in the instant case, we believe the prosecutor's remarks bordered on the impermissible.

In warning against this possible abuse, we do not suggest that the prosecutor is precluded from referring to the factors which bear on the credibility of witnesses generally in attempting to persuade the jury that a police officer's testimony was credible, or in attempting to rehabilitate a police officer's testimony when the officer's credibility has been challenged by defense counsel. By way of illustration, the prosecutor may, where appropriate, cite the objectivity of the police officer; the officer's lack of interest in the outcome of a particular case; the officer's training and experience in noting and recalling important events or details; and the fact that the officer's credibility was not impeached by previous convictions, particularly where this contrasts with an impeached defense witness against whose credibility the police officer's credibility is being weighed. What the prosecutor may not do, however, is argue that the police officer witness is credible simply because he or she is a police officer.

Having reviewed the prosecutor's argument in this case in the light of the foregoing discussion, and noting the lack of objection to it, we are satisfied that the argument did not inject plain error into the proceedings.

Appellant next assigns error to the trial court's denial of his motion for mistrial. This motion followed an answer given by a police officer under cross-examination by defense counsel. Challenging the accuracy of the officer's recollection of the incident and his ability to identify appellant as a participant therein, defense counsel asked,

> [n]ow, this event happened over a year ago. How readily do you recall, how vividly [sic] is your recollection of this incident?

The officer answered,

> [v]ery vivid in this particular case because I arrested [appellant] a second time in the same location.

The trial court, observing that it was a close question whether the answer was not responsive to counsel's "[s]omewhat general question," denied appellant's immediate request that a mistrial be declared but agreed with his alternate request, that the response be stricken from the record, with the appropriate instruction to the jury.[3]

 This court accords "considerable deference" to trial court evaluations regarding the impact of inadmissible evidence that has come before the jury, *Christian v. United States*, 394 A.2d 1, 23 (D.C.1978), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979), and will reverse the trial court's decision regarding a motion for mistrial in such circumstances "only in extreme situations threatening a miscarriage of justice." *Beale v. United States*, 465 A.2d 796, 799 (D.C.1983), *cert. denied*, 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984). With respect to the officer's testimony in the instant case, clearly "it was unfortunate that such a statement was made. The witness was an experienced police officer ... [who] should have known better." *Carter v. United States*, 108 U.S. App.D.C. 277, 278, 281 F.2d 640, 641, *cert. denied*, 364 U.S. 880, 81 S.Ct. 168, 5 L.Ed. 2d 102 (1960). In our view, however, the government's reliance on *Carter* is rightly placed. In *Carter*, a police officer took the stand to testify in a multidefendant case involving charges of illegal gambling. In response to a question by defense counsel seeking to probe the accuracy of the offi-

---

3. The trial court immediately instructed the jury as follows:

> Ladies and gentlemen, the witness' last response, last answer is stricken in its entirety from the record. It's your duty to disregard it completely and just treat it as if it never occurred. It should in no way influence your deliberations in this case.

cer's memory of how many individuals he had searched, the officer mentioned that one codefendant had pled guilty to a felony count of the indictment jointly charging all defendants. On appeal, the D.C.Circuit concluded, in words equally applicable to the instant case, that "in light of the overwhelming evidence of guilt in this case, any prejudice which may have remained despite the judge's admonition to the jury may be said to be harmless." *Id.*, at 278, 281 F.2d at 641. With similar reasoning, we conclude that the trial court did not err in denying appellant's motion for mistrial because the instruction the court gave reduced any prejudice sufficiently to render it harmless.

Accordingly, the conviction on appeal is hereby

*Affirmed.*